UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KEVIN MARK MILLER,

                                                         18-CV-6848-MJR
                                                         DECISION AND ORDER
                              Plaintiff,

       -v-

ANDREW SAUL,
Commissioner of Social Security,

                              Defendant.
_____

       Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 21).

       Plaintiff Kevin Mark Miller brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security finding him ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Miller's motion (Dkt. No. 15) is denied, the Commissioner's motion (Dkt. No. 19) is granted, and this case is dismissed.

## BACKGROUND[1]

       Miller protectively filed an application for DIB on September 30, 2015, alleging a disability as of November 20, 2008, due to lower back problems. (Tr. 132-138).[2] He later amended his onset date to September 29, 2010. (Tr. 217). His claim was initially denied

---

[1] The Court assumes the parties' familiarity with the record in this case.
[2] References to "Tr." are to the administrative record in this case.

on December 1, 2015. (Tr. 72-76). Miller then filed a written request for a hearing before an administrative law judge. (Tr. 77).

On December 4, 2017, a video hearing was conducted by Administrative Law Judge ("ALJ") Brian LeCours. (Tr. 33-66). The ALJ appeared in Albany, New York, while Miller appeared in Elmira, New York, along with his attorney. (Tr. 42-72). A vocational expert also appeared.

On January 23, 2018, the ALJ issued a decision finding Miller not disabled. (Tr. 10-19). That decision became final when on October 4, 2018, the Appeals Council denied his request for review. (Tr. 1-6). This action followed.

## DISCUSSION

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the

conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy

exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in

Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

The ALJ preliminarily found that Miller's last date insured was December 31, 2013. (Tr. 12). Thus, Miller was required to establish that he was disabled prior to that date. See 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The ALJ then followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that Miller had not engaged in substantial gainful activity since September 29, 2010, his alleged onset date, through his last insured date of December 31, 2013. *Id*. At step two, the ALJ concluded that Miller has the following severe impairment: degenerative disc disease of the lumber spine. *Id*. At step three, the ALJ found that through the date last insured, Miller did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 13). Before proceeding to step four, the ALJ found that Miller "had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he could occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. He could never climb ladders, ropes, or scaffolds. [He] could occasionally operate pedal controls bilaterally." (Tr. 13). Proceeding to step four, the ALJ found that through the date last insured, Miller was unable to perform any past relevant work. (Tr. 17-18). At step five, the ALJ found that, considering Miller's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform,

namely, Production Assembler, Cashier, and Parking Lot Attendant. (Tr. 18-19). Accordingly, the ALJ concluded that Miller was not disabled under the Act, from the alleged onset date through the date last insured. (Tr. 19).

IV. *Miller's Challenge*

Miller argues that this case must be remanded because the ALJ improperly applied the "treating physician rule" to the November 20, 2017 opinion of his treating physician, Dr. Bernard Sweeney, M.D., opining that he has substantial functional limitations. (Tr. 329-332). The Court disagrees.

The "treating physician rule" "requires the ALJ to give 'controlling weight' to the opinion of a claimant's treating physician regarding 'the nature and severity of [the claimant's] impairment(s) . . . [if it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Piatt v. Colvin*, 80 F.Supp.3d 480, 491 (W.D.N.Y. 2015) (quoting 20 C.F.R. § 404.1527(c)(2)). Where an opinion is unsupported—or where it is inconsistent with other substantial evidence—the ALJ is not required to afford deference to that opinion. 20 C.F.R. § 404.1527(c)(2).

If an ALJ decides that the opinion of a treating physician is not entitled to controlling weight, he or she must determine how much weight, if any, to give it. In doing so, the ALJ must "explicitly consider" the following factors (the so-called *Burgess* factors): "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (*per curiam*) (internal quotations and citations omitted). The

ALJ must give "good reasons" for the weight given to the treating physician's opinion. *Id.* at 96 (internal quotations and citations omitted). An ALJ's failure to "explicitly" apply the *Burgess* factors is a procedural error, and such error is not harmless, unless "a searching review of the record" shows that the substance of the treating physician rule was not traversed[.]" *Id.* (internal quotations and citations omitted).

Here, in rejecting Dr. Sweeney's opinion, the ALJ did not expressly consider the *Burgess* factors, thereby committing procedural error. However, the Court finds that such error was harmless, because the ALJ gave good reasons for affording Dr. Sweeney's opinion only "little weight." After a searching review of the record, the Court finds that the substance of "treating physician rule" was not traversed in this case.

First, the ALJ found that Dr. Sweeney's opinions were inconsistent with other evidence in the record, including Dr. Sweeney's own treatment notes. As the ALJ stated, "evidence from before the date last insured, including Dr. Sweeney's own treatment notes, do not support th[e] degree of limitation" in Dr. Sweeney's opinions. (Tr. 17). "Dr. Sweeney's physical examinations [we]re generally benign with only intermittent findings of limited mobility or tenderness in the context of acute episodes of back pain. He did not describe significant neurological deficits, weakness, or abnormal gait that would support such limitations on a sustained basis." *Id.*

More specifically, in January 2010, on physical examination, Dr. Sweeney observed "no tenderness or spasm with negative straight leg raising." (Tr. 14, 252). After complaining of sharp lower back pain while working on a woodpile, Miller "recovered from his back pain with benign physical findings within one month." (Tr. 15, 248) (providing that Miller was "[d]oing much better," prednisone "helped a lot," "[m]uch more comfortable


today," "[e]asily moving into exam room," "[n]o spasm," and "[n]egative straight leg raising").

Dr. Sweeney ordered an MRI, which showed "multilevel disc degeneration but only mild central canal stenosis ... and no significantly displaced nerve roots." (Tr. 15, 220-21). Indeed, Miller reported feeling less stiff and "Dr. Sweeney suspended [his] pain medication and referred him to pain management." (Tr. 15, 236). The ALJ described the MRI results as "modest."[3] (Tr. 15).

With respect to the other medical evidence in the record inconsistent with Dr. Sweeney's opinions, Dr. Lai Kuang (a pain specialist) observed a "non-antalgic gait," "intact motor strength and sensation," "full range of motion with no tenderness to palpation and negative straight leg raising." (Tr. 15-16, 223). Dr. Kuang concluded that Miller was "currently not in any significant pain and his pain is tolerable and mild." (Tr. 16, 224). He prescribed tizanidine and offered an epidural injection. (Tr. 16, 224). The ALJ reasonably found that "Dr. Kuang's benign findings and conservative treatment recommendations [we]re inconsistent with [an] allegedly disabling spinal impairment." (Tr. 16).

Further, as the ALJ noted throughout his decision, Dr. Sweeney treated Miller only sporadically. He had seen Miller only once in the four years preceding his November 2017 assessment. There were serious gaps (including one gap of two-plus years) in Miller's treatment with Dr. Sweeney. The evidence shows Miller first treated with Dr.

---

[3] Miller takes issues with the ALJ's description of his MRI results, arguing that the ALJ interjected his lay opinion by describing the MRI results as "modest." The Court finds this argument without merit. The interpreting radiologist described the results as including "mild central canal stenosis" and "no significantly displaced nerve roots." (Tr. 221). Further, the interpreting radiologist observed "age appropriate" bone marrow signal, "no compression fractures or regions of bone destruction," "minimal posterior disc bulging," "no disc extrusion," and "unremarkable" central canal and right neural foramen. (Tr. 220). Thus, there is substantial evidence to support the ALJ's description of the MRI results as "modest."

Sweeney in January 2010 (prior to his alleged onset date) for back pain. (Tr. 14, 252). Miller, the ALJ observed, "did not return to Dr. Sweeney until September 2011, almost two years later and one year after the claimant alleges that he became disabled. Thus, there is no evidence that the claimant was endorsing debilitating back pain or demonstrated substantial functional deficits at the alleged onset date." (Tr. 15).

After visits in September 2011, Miller "did not require further treatment for chronic back pain" and "returned to Dr. Sweeney in August 2012," nearly a year later, "for acute back pain after turning while placing an item in a grocery cart." *Id*. Another year passed and Miller "only returned to Dr. Sweeney in August 2013." (Tr. 16). Miller "did not seek treatment from Dr. Sweeney at any time in 2014 or 2015; the next appointment of record is a regular follow-up from March 2016." *Id*. "Although any individual episode of pain may not warrant medical intervention, the claimant's lack of any treatment for his back for over two years after this last appointment in August 2013 indicates that the claimant's condition was essentially stable through the date last insured without serious worsening or need for revision in his medication regimen." *Id*.

In evaluating Dr. Sweeney's opinion, the ALJ also expressly found that, "Dr. Sweeney recommended generally conservative treatment without surgery ... [these] conservative treatment recommendations do not support the assessed limitations in lifting, standing, and walking." (Tr. 16). Specifically, Dr. Sweeney "would not recommend surgery" and Miller "declined nerve blocks." (Tr. 16, 232). Dr. Sweeney also "recommended alternative conservative treatment with a chiropractor and acupuncture." (Tr. 16, 232-33). The ALJ noted that there was "no evidence that the claimant actually presented to a chiropractor as recommended by Dr. Sweeney." (Tr. 16). While Dr.

Sweeney referred Miller to a pain specialist, Dr. Kuang concluded that Miller was "currently not in any significant pain and his pain is tolerable and mild." (Tr. 16, 224). He prescribed tizanidine and offered an epidural injection. (Tr. 16, 224).

The ALJ further found that Dr. Sweeney's opinion that Miller needed a cane was unsupported by the medical record. The ALJ noted that "there is no statement in Dr. Sweeney's treatment records suggesting that a cane or other assistive device is medically necessary." (Tr. 17). Indeed, neither Dr. Sweeney nor Dr. Kuang prescribed a cane or other assistive device.

Moreover, while not explicitly discussed in the ALJ's decision, Dr. Sweeney was Miller's primary care provider, not a specialist. (Tr. 327). Conversely, Dr. Kuang (the pain specialist to whom Dr. Sweeney referred Miller), concluded that Miller was "currently not in any significant pain and his pain is tolerable and mild." (Tr. 16, 224). Dr. Sweeney's lack of specialization provides further support for the ALJ's evaluation of Dr. Sweeney's opinions.

Finally, contrary to Miller's argument, the ALJ properly relied upon evidence of Miller's activities in discounting Dr. Sweeney's opinion and ultimately finding that Miller was not entitled to benefits. Miller reported to Dr. Sweeney in January 2010 that he experienced pain "in the context of shoveling snow for his mother." (Tr. 14, 252). The ALJ reasoned that "[a]lthough the claimant may have had some difficulty shoveling snow, that activity requires lifting weight that exceeds the demands of light work." (Tr. 14). Further, when Miller exacerbated his pain "working on a wood pile," the ALJ explained that this "acute episode of back pain suggests that some functional limitations against physically demanding activities is appropriate." (Tr. 15). A limitation to light work with

limited postural activities, as found by the ALJ, is consistent with a restriction against work cutting and stacking wood. (Tr. 15).

In sum, the Court finds that the ALJ's decision is supported by substantial evidence and must be affirmed.

## CONCLUSION

For the reasons stated, Miller's motion for judgment on the pleadings (Dkt. No. 15) is denied, the Commissioner's motion for judgment on the pleadings (Dkt. No. 19) is granted, and this case is dismissed.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   May 27, 2020
         Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge